CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 21, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-00039 |
| ) | |
| ) | |
| MCCALLUM-GILLISPIE, LLC, *et al.*, ) | |
| ) | |
| Defendants, ) | |

**ORDER**

This action involves a claim for damages by Plaintiff, Joe Hand Promotions, Inc., against Defendants, McCallum-Gillispie, LLC (d/b/a The Pier), Rebecca Gillispie, Brooke Lange, and Devin McCallum[1], for infringing on Plaintiff's rights to the pay-per-view broadcast of *Ultimate Fighting Championship® 364: Poirier v. McGregor 3* including all undercard bouts and commentary. Joe Hand brought this action contending that on July 10, 2021, at The Pier in Culpeper, Virginia the defendants broadcast the pay-per-view fights without having the rights to do so in violation of the Federal Communications Act, 47 U.S.C. § 605, *et seq.*, or in the alternative, 47 U.S.C. § 553, *et seq.* The Court entered Default Judgment against the defendants in favor of Plaintiff on March 29, 2024. Dkt. 25. All that remains is for the Court to determine damages.

**I.    Facts**

Plaintiff filed the present action alleging a violation of the Federal Communications Act, 47 U.S.C. § 605, *et seq.*, or in the alternative, 47 U.S.C. § 553, *et seq.* Defendants have

---

[1] Defendant Samantha Crow was previously dismissed by joint stipulation and Plaintiff seeks no damages from her. Dkt. 23, 24.

failed to timely respond to the pleadings and have been found in default. Because Defendants have defaulted, they have admitted the Complaint's "well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

Plaintiff is a distributor of sports and entertainment programming to commercial establishments. Plaintiff entered into an agreement with the promotor of this UFC event providing Plaintiff with the exclusive right to license the distribution of the UFC fights to commercial establishments.

This agreement allowed commercial establishments to purchase the right to exhibit certain programming, like the UFC fights, for a fee. This fee is calculated based on occupancy of the commercial establishment. Dkt. 22-1 at 2; Dkt 22-2 at 20. In Virginia, these particular UFC fights were legally available to the public either through Plaintiff for broadcast in commercial establishments, or through ESPN+ for residential cable subscribers. A commercial establishment which purchased from Plaintiff the right to show the fights received electronic decoding equipment and satellite coordinates allowing it to obtain the signal to stream the fights.

Defendants, Rebecca Gillispie, Brooke Lange, and Devin McCallum owned and operated The Pier, a commercial establishment located in Culpeper, Virginia. Specifically, the Defendants were all members of McCallum Gillispie LLC (later changed to Pier Mermaids LLC) which was the corporate owner The Pier.

On the date of the UFC fights, Defendants intercepted the coded signal and broadcast the fight at the Pier without purchasing a license from Plaintiff to show the fights in its restaurant. An auditor, hired by Plaintiff, audited the activities at the Pier the night of the

fights and observed, in person, the establishment broadcasting the fights to its patrons. Dkt 22-2 at 21. Plaintiff then filed the present action.

## II. Damages

Because it had a proprietary interest in the intercepted signal, Plaintiff is an "aggrieved party" under 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A) and therefore has standing to bring this suit. Plaintiff asserts a claim under the Communications Act of 1934, 47 U.S.C. § 605 *et. seq.* and The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq.* Sections 605 and 553 are similar, however, § 605 provides for mandatory recovery of costs and attorneys' fees while, under § 553, recovery of such damages is discretionary.

Section 553 provides, in relevant part, that "no person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator . . . ." 47 U.S.C. § 553(a)(1). Section 605, on the other hand, provides that "[n]o person receiving . . . any interstate or foreign communications by wire or radio shall divulge or publish the existence, contents, substance purport, effect, or meaning thereof . . . ." 47 U.S.C. § 605(a). Though § 605(a) expressly references radio communications, it "has been interpreted to prohibit the theft of scrambled satellite communications and cable television services." *E.g.*, *That's Ent., Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993).

The plaintiff alleges that the defendants broadcast the event at the Pier to its patrons on all its televisions and did so without a proper license. To obtain the broadcast signal for the event, the defendant had to intercept a cable and/or satellite communication. The act of

intercepting cable and/or satellite communications and broadcasting that signal to its patron without a license is a violation of both § 553 and § 605.

District courts within the Fourth Circuit have consistently applied the position that § 605 covers interception by cable, and where a defendant is liable under both §§ 553 and 605, the plaintiff may only recover damages under one section, but may elect the section under which it recovers. *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 666 (E.D. Va. 2013). Plaintiff has elected to recover under § 605. Dkt. 22-1 at 5.

### a. Damages under § 605(e)(3)(C)(i)(II)

Under § 605, an aggrieved party may elect to have damages calculated in one of two ways: (1) the actual damages suffered because of the violation and any profits of the violator attributable to the violation; or (2) statutory damages. Plaintiff has elected to use the second option—statutory damages—as laid out in § 605(e)(3)(C)(i)(II).

Section 605(e)(3)(C)(i)(II) provides that "[t]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." Statutory damages are appropriate where, as here, actual damages are difficult to prove. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981).

The only concrete damage known in this case is the sublicense fee, which the defendant failed to pay for the right to broadcast the event. The defendant restaurant would have had to pay $1,095 for the sublicense fee to broadcast the event based on the capacity for one hundred patrons at the restaurant. Dkt. 22-2 at 20. That amount, however, does not

4

consider the difficulty of detecting these types of violations. In this case, the plaintiff had to expend resources to send an auditor to this restaurant to see if the restaurant would unlawfully broadcast the fight. Further, the defendant restaurant presumably received some profit from unlawfully broadcasting the fights to its patrons. Most importantly, awarding actual damages does not consider the deterrence needed in cases like this one.

      District courts within the Fourth Circuit employ one of three methods in determining damages under § 605, with the second and third approaches being the most common. The first approach awards a flat amount equal to the sublicense fee that was not paid. *J & J Sports Prods., Inc. v. Lara Sport House Corp.*, No. l:10–cv–01369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding $2,200, the licensing fee based on establishment's capacity). The second approach awards damages on per-patron rate. *Joe Hand Promotions, Inc. v. Lawhon*, No. 1:14cv459, 2016 WL 160730, at *2 (M.D.N.C. Jan. 13, 2016) (applying rate of $100 for twelve patrons for a total of $1200); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 667 (E.D. Va. 2013) (finding sublicense fee alone insufficient to deter future violations and applying a per-patron rate of $100 per patron); *Joe Hand Promotions, Inc. v. Citibars, Inc.*, No. 2:11cv58, 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012) (applying $100 per-patron fee). Third, some courts award a flat sum per violation. *Coaches Sports Bar*, 812 F. Supp. 2d at 704 ($2,000); *J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Grille*, No. 2:09–03141–DCN–RSC, 2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010) ($5000); *Joe Hand Promotions, Inc. v. Angry Ales, Inc.*, No. 3:06cv73, 2007 WL 3226451, at *5 (W.D.N.C. Oct. 29, 2007) ($1000); *Kingvision Pay–Per–View, Ltd. v. Gadson*, No. 1:04–678, 2007 WL 2746780, at *2 (M.D.N.C. Sept. 18,

5

2007) ($10,000); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest.*, No. 4:07-cv-67-D, 2007 WL 2700008, at *3 (E.D.N.C. Sept. 11, 2007) ($2,000). I adopt the third approach and find it appropriate to award a flat sum of $2,000 for Defendants' violation of § 605.

### b. Damages under § 605(e)(3)(C)(ii)

Section 605(e)(3)(C)(ii) grants the court discretion to award up to $100,000 in enhanced statutory damages in any case where the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain. By virtue of default, Defendants have admitted that the illegal broadcast of the UFC fight was willful and committed for direct or indirect commercial advantage or private financial gain.

When determining these additional damages, other courts have considered factors "such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View v. Rodriguez,* 2003 WL 548891, at *1 (S.D.N.Y. Feb. 24, 2003); *see also Joe Hand Promotions, Inc. v. Bougie, Inc.,* 2010 WL 1790973, at *6 (E.D. Va. April 12, 2010).[2]

In the present case, there is no evidence that Defendants have committed any other

---

[2] Additional damages awarded under § 605 have varied tremendously in the Eastern District of Virginia. *See, e.g., J & J Sports Prods., Inc. v. Bougie, Inc.,* Civil Action No. 1:10cv01374, 2011 WL 6202909, at *7 (E.D. Va. Nov. 25, 2011) ($35,000.00); *J & J Sports Prods., Inc. v. Ricos Tacos Moya Restaurant, Inc.,* Civil Action No. 1:10cv1368, 2011 WL 6100286, at *6 (E.D. Va. Nov. 21, 2011) ($20,000.00); *Integrated Sports Media, Inc. v. Buruca Brother's Virginia, Inc.,* 2011 WL 5873078, at *7 (E.D. Va. Nov. 1, 2011) ($2,000.00); *Veltsistas,* 2011 WL 5826059, at *3 ($5,000.00); *J & J Sports Prods., Inc. v. Great Latin Restaurants, L.C.,* Civil Action No. 1:11cv459, 2011 WL 5873071, at *6 (E.D. Va. Sept. 15, 2011) ($100,000.00).

violations before or after the violation at issue in this case. Nor is there any evidence that Defendants received substantial monetary gains because of their unlawful pirating and broadcasting of this event. Defendants did not charge a cover charge and there is no evidence of any premiums being charged for food or drinks. While Plaintiff assuredly suffered actual damages because of Defendants' actions, Plaintiff admits such damages are difficult to accurately calculate. Dkt. 22-1 at 6–8. However, Plaintiff only seeks $2,000 in statutory damages—a far cry from "significant actual damages." Lastly, I look to the fact that Defendants advertised their intent to broadcast the event on Facebook. Dkt. 22-3. This shows their intent to engage in the unlawful broadcasting of the fights and to use that unlawful broadcast for their own financial gain by bringing paying customers to their establishment. Considering these factors, I find that enhanced damages of $5,000—2.5 times the amount of imposed statutory damages—are appropriate.

### c. Attorneys' Fees and Costs

Plaintiff seeks $1,500 in attorneys' fees and $1,678.30 in costs. Section 605 allows the prevailing party to recover full costs and reasonable attorneys' fees. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff estimates that attorneys' fees for this case are approximately $1,500 based on six hours of work at an hourly rate of $250. For costs, the plaintiff includes the filing fee and the cost for service of process on all defendants.

I find the requests for attorneys' fees and costs are reasonable and order that Plaintiff be awarded $1,500 in attorneys' fees and $1,678.30 in costs.

### d. Individual Liability under 47 U.S.C. § 605

An individual defendant may be held personally liable for a violation of § 605 if she

had the right and ability to supervise the infringing activity and to receive a direct financial benefit from the infringing activities. *Joe Hand Promotions, Inc. v. Double Down Entertainment, LLC*, No. 0:11-cv-2438-MBS, 2014 WL 994382, *6 (D.S.C. Mar. 13, 2014); *Joe Hand Promotions, Inc. v. Maryland Food & Entertainment, LLC*, 2012 WL 5879127, at *2 (D. Md. Nov. 19, 2012). *See also*, *e.g.*, *J & J Sports Productions, Inc. v. L & J Group, LLC*, 2010 WL 816719, at *2 (D. Md. Mar. 4, 2010) (stating that a Cable Act plaintiff must show that the defendant "'had a right and ability to supervise the violations, and that she had a strong financial interest in such activities'") (citation omitted).

Defendants Rebecca Gillispie, Brooke Lange, and Devin McCallum are individually liable as they were the sole owners and operators of the Pier on the night of the UFC fight, and thus had the right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities. Further, by virtue of default, Defendants have admitted they had both the right and ability to supervise the infringing activities and a direct financial benefit from the infringing activities at the establishment on the night of the fight. Accordingly, I find the defendants, Rebecca Gillispie, Brooke Lange, and Devin McCallum, are individually liable for the damages imposed.

### III. Conclusion

Plaintiff is awarded $2,000 in statutory damages under § 605(e)(3)(C)(i)(II), $5,000 in enhanced damages, and costs and attorney's fees under § 605(B)(iii) ($1,500 in legal fees and $1,678.30 in costs). In total, Plaintiff is awarded $10,178.30. Further, Rebecca Gillispie, Brooke Lange, and Devin McCallum are individually liable for the damages imposed.

It is so **ORDERED**.

Enter:   May 21, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge